# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *ex rel.*
ANTHONY BENNETT,

                                        Plaintiffs/Relator,[1]

            vs.                                          6:18-CV-1403
                                                         (TJM/ATB)

STEVEN T. MNUCHIN et al.,

                                        Defendants.

ANTHONY BENNETT, Plaintiff Pro Se

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## ORDER and REPORT-RECOMMENDATION

The plaintiff in this sealed action has filed a civil complaint against defendants pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. (Dkt. No. 1). Plaintiff has also filed an application to proceed in forma pauperis ("IFP"), and a motion for appointment of counsel. (Dkt. No. 3, 6).

## I.     IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth

---

[1] In a Qui Tam action, the individual bringing the action is known as the "relator." However, as will be discussed below, this action bears no resemblance to a qui tam action, and appears to be an attempt to sue various individuals, some of whom are afforded absolute immunity, on various meritless bases. Plaintiff also refers to himself as "plaintiff/relator" and to himself and the United States as plaintiffs. Thus. the court will refer to Mr. Bennett as the "plaintiff" in this action.

in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall

dismiss the case at any time if the court determines that the action is (i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915

(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether

the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S.

319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of

court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S.

at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has

a duty to show liberality toward *pro se* litigants, and must use extreme caution in

ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been

served and has had an opportunity to respond, the court still has a responsibility to

determine that a claim is not frivolous before permitting a plaintiff to proceed.

*Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000)

(finding that a district court may dismiss a frivolous complaint *sua sponte* even when

plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain

sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  The court will now turn to a consideration of the plaintiff's complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II.  <u>Facts</u>

The plaintiff has sued a variety of defendants, including Steven T. Mnuchin, the United States Treasury Secretary; Scott M. Stringer, New York City Comptroller; Richard A. Brown, "District Attorney;" John B. Latella, "Administrative Judge;" Audrey Pheffer, "County Clerk;" Barbara D. Underwood, New York State Attorney General; Anthony Annucci, Commissioner of the Department of Corrections and Community Supervision ("DOCCS"); Diane Davis, United States Bankruptcy Judge; and Deborah J. McCullock, Executive Director of the Central New York Psychiatric Center ("CNYPC"). (Petition/Complaint ("Compl.") at 1, CM/ECF p.7)[2] (Dkt. No. 1).

The plaintiff identifies himself as a "Third Party Intervener on behalf of Anthony

---

[2] The actual complaint is located at page 7 though 13 as assigned by the court's electronic filing system ("CM/ECF").  The rest of the documents attached appear to be exhibits or plaintiff's affidavits. (Dkt. No. 1 at CM/ECF pp. 1-6, 14-57).  Even though plaintiff has numbered his exhibits, the individual pages of the exhibits are sometimes not numbered sequentially.  Therefore, court will cite to the page numbers of the complaint itself as plaintiff has numbered them, but will include the page numbers as they are assigned by CM/ECF for the rest of the documents.

Bennett Estate."[3] (*Id.*)  The complaint criticizes the actions of Northern District of New York Bankruptcy Judge Diane Davis.  Plaintiff claims that Judge Davis improperly dismissed his "involuntary" bankruptcy petition. (Compl. *generally*).  Plaintiff states that Judge Davis and the Clerk of the Court had a "predetermined decision ready on paper to deprive Plaintiff(s) . . . of the Property of the Estate . . . ." (Compl. at 2). Plaintiff states that he sent a "Certificate of Protest and attachments and Writ of Execution . . . for filing and registration . . . ." (*Id.*)  Plaintiff states that when he received no response from the Bankruptcy Court in Utica, he filed a "'Bill in Equity'" because of the "fraud and deceit of the Court." (*Id.*)  Plaintiff states that the Bankruptcy Court has failed to respond to any of plaintiff's submissions, and he "respectfully demand[s]" an investigation of the "entire <u>Court record</u> and <u>Policy and Procedure in the form of Discovery</u> . . . ." (*Id.*) (emphasis in original).  Plaintiff claims that Judge Davis violated her oath of office, has issued "void orders," and predetermined plaintiff's decision, in contravention of all laws and procedures. (*Id.*)

Plaintiff states that he has "Noticed" the President of the United States by certified mail. (Compl. at 4).  Plaintiff then turns to a discussion of the Internal Revenue Service ("IRS"), stating that the "only thing that can create a debt with the IRS

---

[3] It is unclear why the plaintiff refers to himself as a person and as an "estate."  Plaintiff states that when he filed his "involuntary" petition in bankruptcy, the filing created a "bankruptcy estate" for the protection of his "property," "even though an order for relief may never be entered." (Compl. at 2-3 CM/ECF at 8-9).  Plaintiff appears to believe that the "estate" continued even after the bankruptcy case was dismissed.

is the assessment." (*Id.*) Plaintiff appears to state that in filing his "involuntary" bankruptcy petition, he was seeking to meet with a trustee from the Department of Justice, who could assist him with some IRS "liability." (Compl. at 5). Plaintiff then states that he had stated his "intent" to pay all of his assessed taxes and pay all "proven" liabilities, but he would bring an action for "fraud" against anyone filing a "proof of claim unaccompanied by evidence of a debt, obligation, or liability." (*Id.*)

Plaintiff also alleges that Judge Davis and her clerk violated a variety of other federal statutes, including sections of the criminal law. (Compl. at 7-13). The complaint contains a section for "Claims," followed by two "Counts." (*Id.* at 7-11, 11-13). In addition to the False Claims Act, plaintiff has alleged violations of 18 U.S.C. § 1001 (false statements); 18 U.S.C. §§ 241 and 242 (criminal civil rights violations)[4]; the U.S. Patriot Act and Bank Secrecy Act;[5] the "New York Securities Act & Investment Advisors Act;" and 18 U.S.C. § 1956 (laundering of monetary instruments).

Plaintiff's exhibits include a "Stipulation of Discontinuance," dated August 16, 2018, signed by Christopher J. Wagner, Esq. of the Mental Hygiene Legal Services, and attorney for plaintiff and "so-ordered" by the Honorable Walter W. Hafner, County Court Judge. (Compl. Exh. A at CM/ECF 20-22). Plaintiff has attached a lengthy

---

[4] In this section of the complaint, plaintiff also appears to challenge his "civil commitment" as being a violation of the double jeopardy clause and the ex post facto clause. (Compl. ¶¶ 16, 17 at 10).

[5] Plaintiff states that the defendants are required by the Patriot Act and the Bank Secrecy Act to reveal the "source of their funds by filing a currency transaction report." Plaintiff cites 31 U.S.C. § 5311 which is entitled "Declaration of Purpose." Plaintiff does not specify which sections of either statute he is relying upon.

affidavit to Exhibit A, which consists of stream-of-consciousness statements that may or may not mean something to the plaintiff.[6] (Compl. at CM/ECF 24-38). The complaint includes another exhibit which appears to be a July 17, 2018 receipt from the Data Processing Unit of the Uniform Commercial Code Division of the New York Department of State, acknowledging the filing of a "financing statement" by plaintiff. (Compl. Exh. B at 1, CM/ECF 39). Plaintiff has also attached a copy of the "financing statement" itself, which lists the "collateral" as a "Certificate of Protest . . . for $100,000,000.00 /USD." (Compl. Ex. B at 2, CM/ECF at 40).

Plaintiff has attached the documents that he filed in the Northern District of New York Bankruptcy Court, labeled "Petition to Intervene." (Compl. Ex. C at CM/ECF 42-45). Plaintiff states that he is the "Third Party Intervenor," who claims an interest in the entire case. (Compl. at CM/ECF at 42). Plaintiff has also attached the "Order to Show Cause," issued by Judge Davis. (Compl. Exh. CD, CM/ECF at 46). The order indicates

---

[6] This affidavit is entitled "Affidavit and Declaration of Standing/Status Non-negotiable . . . ." (Compl. at CM/ECF 24-38). Without engaging in a lengthy discussion of the affidavit, the court notes that it includes statements such as: "We are the absolute property of our universal creator and our noble House of Bennett and derivatives there of a man . . . ." (*Id.*) "Our distinct Polyphrenic orchestration is determined by our unique, complex and intense DNA, Genome coding and patterning, that determines our noosphere [sic] and existential purpose . . . ." (*Id.*) Plaintiff states that "[a]t no time, space, reality, realm or dimension does [sic] any have any right to place a price or value on our Divine Being or out sacred gifts defined as Our Estate in Trust with out Universal Divine Creator, except our Divine Being and/or our Universal Divine Creator." (Compl. at CM/ECF 30). Plaintiff then states that no "fiction of law such as a "Birth Application, Record of Live Birth, or an other Registration of Certificate," regardless of title or registration, may "ever be considered a conveyance of title from our Divine Being. (*Id.*) The affidavit continues in the same vein. He discusses "strawman" trusts, fiduciary trustees, and authorized versus unauthorized agents. (Compl. at CM/ECF 32-33). Apparently, unauthorized agents must be fined one billion dollars "per capacity and per occurrence." (*Id.* at 33). Plaintiff alleges that by "publishing" his declaration, he enforces the right to be "free from slavery," among other things. (Compl. at CM/ECF 36-37).

that the plaintiff's action was subject to dismissal for failure to pay the filing fee and noncompliance with "the involuntary filing requirements set forth in 11 U.S.C. § 303 (b)." (*Id.*)  Plaintiff was ordered to appear at the Federal Court House in Utica on October 23, 2018. (*Id.*)  Judge Davis dismissed the action on November 2, 2018 "for the reasons stated on the record." (Compl. Exh. E, CM/ECF at 47).

The next exhibit is a receipt of plaintiff's claim against the City of New York, dated February 9, 2018. (Compl. Exh. F at CM/ECF 48).  The claim was acknowledged by the Comptroller of the City of New York.  The receipt states that plaintiff's claim was "under investigation." (*Id.*)  The plaintiff's next exhibit is the Comptroller's response to plaintiff's claim. (Compl. Ex. G, CM/ECF at 49).  The response is dated February 14, 2018 and states that plaintiff's "International Bill of Exchange," presented to the Queens County Supreme Court, did not state a claim under New York's Administrative Code. (*Id.*)  Plaintiff's Exhibit H is an affidavit that he sent to the Bankruptcy Court. (Compl. Exh. H, CM/ECF at 50-51).

Plaintiff has also included a document, dated February 6, 2018, which is not listed as a separate exhibit. (CM/ECF at 52-55).  This document includes an "Assessment of Admitted Damages." (*Id.*)  It appears that this was one of the documents that plaintiff submitted to the Queens County Supreme Court.  Finally, plaintiff includes a "Beneficiary/Estate Price List." (*Id.* at 56).  This document includes typewritten violations, listed under the heading "Product or Service." (*Id.*)  Each

violation contains a "Product Number" and a "Price" listed. There are handwritten check marks next to several of the violations.[7] (*Id.*)

## III. <u>Qui Tam/Representation</u>

### A. Legal Standards

The FCA contains a "qui tam" provision authorizing private citizens, called "relators," to sue on behalf of the United States government to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of those claims or to avoid the payment of money or property to the Government. *See* 31 U.S.C. § 3730(b).

In order to bring an action under the FCA, the relator must file the complaint under seal and give the government an opportunity to intervene. *Id*. § 3730(b)(2). The Government then has an initial period of 60 days to decide whether to intervene. *Id.* If the Government chooses not to intervene, the relator may proceed on the Government's behalf and, in either case, the relator is entitled to a percentage of any award received. 31 U.S.C. §§ 3730(c)(3); 3729(d).

### B. Application

Plaintiff has brought this action under the FCA. However, the Second Circuit has specifically held that qui tam plaintiffs may not proceed pro se. *Berger v. New York*

---

[7] For example, "Product Number PS001" is "Abuse of Power," and the "Price" is 20,000. (*Id.*) "Product Number PS002" is "Abuse of Process," and the "Price" is 100,000. There are 98 violations listed with check marks next to 41 of them. (*Id.*)

*State Office for People with Developmental Disabilities*, No. 6:16-CV-1277, 2018 WL 1444213, at *5 (N.D.N.Y. Mar. 22, 2018) (citing *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008)); *See also Byrd v. Mazzola Ins. Corp.*, No. 6:17-CV-6178, 2017 WL 5508814, at *4 (W.D.N.Y. Apr. 5, 2017) (citing *Palmer v. Fannie Mae*, No. 14-CV-4083, 2016 WL 5338542, at *4 (E.D.N.Y. Sept. 23, 2016)).

In *U.S. ex rel. Mergent Services*, the court stated that in a qui tam action, the Government remains the real party in interest, even though the relator has a stake in the outcome. 540 F.3d at 93. Because the Government is the real party in interest, it is not the relator's "own case." *Id.* (citations omitted). It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[8] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. This court could have recommended dismissal of the action on this basis alone. However, plaintiff has moved for appointment of counsel (Dkt. No. 6), and therefore the court will continue its analysis.

## IV.   **Appointment of Counsel**

### A.   **Legal Standards**

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915

---

[8] A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case, even though plaintiff refers to himself as an estate. He may not represent the Government's interests.

specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

## B.     Application

As stated above, plaintiff may not bring this qui tam action pro se.  Plaintiff now
asks for an attorney.  Thus, the court will proceed to the full analysis of plaintiff's
counsel motion.  Normally, the court would have denied the plaintiff's motion for
appointment of counsel because he has failed to show that he attempted to find counsel
on his own before asking the court for an attorney. *See Cooper v. A. Sargenti Co., Inc.*,
877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge*, 802 F.2d at 61) (prior to evaluating
a request for appointment of counsel, a party must first demonstrate that he is unable to
obtain counsel through the private sector or public interest firms).  However, even if
plaintiff had tried to find counsel on his own, as this court will discuss below, the
complaint does not have substance and cannot meet the first requirement for
appointment of counsel.

### 1.     Rule 8

#### a.     Legal Standards

The Federal Rules of Civil Procedure require that a complaint contain "'a short
and plain statement of claim showing that the pleader is entitled to relief,' and that each
averment be 'concise and direct.'" *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL
1385890, at *2 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quoting
Fed. R. Civ. P. 8(a)(2), 8(d)(1)).

### b.    Application

The court is well-aware that pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  In this case, even if read liberally, plaintiff's complaint fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual named in the caption of the complaint.  The complaint is extremely difficult to read, and other than his claims against Judge Davis and her staff, he says very little about any of the other defendants.  When he does mention the other defendants, plaintiff simply states that they violated various statutes without providing a factual basis for his allegations or explaining how the specific defendant was involved in the alleged violation.  Thus, the complaint violates Rule 8.  The court will also discuss what it believes to be the specific claims that plaintiff is attempting to raise.

### 2.    Qui Tam/Substance

In a qui tam action, the plaintiff is seeking to vindicate rights belonging to the federal government. *See Byrd v. Mazzola Ins. Corp.*, 2017 WL 5508814, at *4.  This plaintiff is clearly attempting to vindicate his own rights, whatever they may be. Plaintiff states in "Count I" that defendants have "presented or caused to be presented to an officer or employee of the government false or fraudulent claims for payment in [the] form of Penal Bonds unbeknowance [sic] to the Plaintiff, and illegally charging the Constructive Trust." (Compl. at 11).

Plaintiff has taken the words of the statute and has added the allegations that "defendants" engaged in the acts described in the statute. These allegations are without any basis, even in his own description of the defendants' conduct. There is no indication that Judge Davis or any of the other defendants, including the United States Treasury Secretary presented a "Penal Bond"[9] for payment by the federal government or asked for any other payment from the federal treasury. Thus, plaintiff does not state a qui tam claim.

### 3. Absolute Immunity

#### a. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10

---

[9] Plaintiff does not explain what he means by a "Penal Bond," nor does he explain why or how any of the defendants would have presented such a bond to the United States government for "payment." Later in the complaint, plaintiff cites to General Service Administration ("GSA") forms, which plaintiff claims are being "used" by defendants to steal money. One of these forms is GSA SF (standard form) 25, which is a Performance Bond, used in connection with Government contracts. The bonds ensure the contractor's performance of the contract and provide for a "Penal Sum of Bond" if the contractor breaches the contract. Plaintiff may be referring to these bonds, but clearly, there is no nexus between these "bonds" and the defendants in this case. GSA SF 24 is entitled "Bid Bond;" and GSA 25A is entitled "Payment Bond." The Payment Bond provides that it is to be used "for the protection of persons supplying labor and materials in contracts with the Government. The plaintiff refers to a Miller Reinsurance Agreement 273, 274, and 275. He may be referring to SF 273 which is a "Reinsurance Agreement for a Miller Act Performance Bond." The purpose of this bond is to guarantee and indemnify the United States against loss. https://www.gsa.gov/forms-library/reinsurance-agreement-bonds-statute-performance-bond. None of these forms applies to plaintiff, and as stated above, plaintiff has not explained how the defendants "used" these forms to the plaintiff's detriment or to the detriment of the United States. A "tax warrant" creates a lien against real and personal property. https://www.tax.ny.gov/enforcement/collections/warrants_liens.htm. A tax warrant is used by New York State, while the IRS uses federal tax liens. https://www.irs.gov/businesses/small-businesses-self-employed/understanding-a-federal-tax-lien

(1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the

judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### b.    Application

In this case, plaintiff has named Northern District of New York Bankruptcy Court Judge Diane Davis[10] and Acting Queens County Supreme Court Justice John B. Latella as defendants. Plaintiff alleges that Bankruptcy Judge Davis improperly dismissed plaintiff's "involuntary" bankruptcy petition. (Compl. *generally*). Plaintiff explains why he believes that Bankruptcy Judge Davis and her staff failed to properly handle plaintiff's petition, and alleges that the actions and inactions of the court rose to the level of "fraud and deceit." (*See* Compl. at 1-3, CM/ECF pp.7-9). Plaintiff claims that Judge Davis acted improperly when she failed to serve "proper notice" and dismissed plaintiff's petition, knowing that he could not appear in court for her "order to show cause," without an "order to produce."[11] (Compl. at 6, CM/ECF p. 12).

---

[10] Plaintiff also states that Judge Davis "and Law clerk" have committed "these acts." (Compl. at 9). Plaintiff has not named Judge Davis's law clerk as a defendant, and there is no specific statement of what that "law clerk" did. Plaintiff also refers to a court clerk, but has not named that individual as a defendant. A law clerk and a court clerk are generally two different individuals. Plaintiff's careless and conclusory statements regarding individual actors support this court's determination that plaintiff's complaint violates Rule 8 and has no substance for purposes of appointment of counsel.

[11] Plaintiff is civilly confined in the CNYPC and may not leave the facility on his own.

In another section of the complaint, plaintiff alleges that Judge Davis and her court clerk violated 11 U.S.C. § 303(g), (h), and (j) and 18 U.S.C. § 1001 because they did not preserve the "property of the estate" by appointing an "interim trustee under Section 701 of this Title . . . to take possession of the property of the estate and to operate any business of the debtor." (Compl. at 8, CM/ECF at 14).

To the extent that the court can discern what plaintiff's claims might be because most of plaintiff's statements are beyond comprehension, all of the actions described by plaintiff occurred while Judge Davis was presiding over a petition filed by plaintiff in Bankruptcy Court. Judge Davis is therefore, entitled to judicial immunity from suit. Because plaintiff has not stated a qui tam claim against Judge Davis, there is no other jurisdictional basis listed in plaintiff's complaint for bringing an action against the judge. Plaintiff could attempt to sue Judge Davis (a federal actor) for constitutional violations under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (suits against individual federal officials for alleged constitutional violations are brought pursuant to *Bivens*). However, Judge Davis would be entitled to absolute immunity, whatever the basis for the lawsuit.

The same would be true for Justice John Latella.[12] First, plaintiff states that

_____

[12] Claims against an individual, acting under color of state law for alleged constitutional violations would have to be brought under 42 U.S.C. § 1983. Plaintiff does not mention section 1983 and could not sue Justice Latella under that section.

Judge Latella is an "administrative judge."[13]  However, Judge Latella an Acting

Supreme Court Justice in Queens County, listed under "Criminal Court Judges," and his

name is John B. Latella, Jr. https://www1.nyc.gov/site/acj/appointed/criminal-

court.page#latella.  Judge Latella would be entitled to absolute immunity for any

actions he took while presiding over a case involving the plaintiff.  However, plaintiff

does not explain what actions Judge Latella took that plaintiff claims violated any laws.

Therefore, the following discussion would also apply to any claims that plaintiff is

attempting to bring against Judge Latella which would not involve his actions as a

judge presiding over a case involving the plaintiff.[14]

### 4.    Criminal Statutes

### a.    Legal Standards

Crimes are prosecuted by the government, and not by private parties. *Corrado v.*

*New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL

3181128, at *5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15

---

[13] Even if Judge Latella were an administrative judge, absolute immunity has been extended to administrative judges. *Ezeh v. VA Medical Center, Canandaigua, NY*, No. 13-CV-6563, 2014 WL 4897905, at *13 (W.D.N.Y. Sept. 29, 2014) (citing *Butz v. Economou*, 438 U.S. 478, 511 12 (1978) (federal administrative judges); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 714 (S.D.N.Y. 2011) (citation omitted) (state administrative judges).

[14] The same is true for the District Attorney of Queens County, defendant Brown.  Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence).  However, absolute immunity is defeated when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d 495, 502-503 (2d Cir. 2004) (citation omitted).  Because plaintiff's factual statement does not relate to the prosecution of his criminal case, the court will not discuss the potential for prosecutorial immunity.

(2d Cir. 2006). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because there is no private right of action for perjury under New York Law)).

### b.    Application

Plaintiff alleges that defendants have violated 18 U.S.C. § 1001 (false statements), 18 U.S.C. §§ 241 and 242 (criminal civil rights violations), and 18 U.S.C. § 1956 (money laundering). Section 241 is "Conspiracy against rights" and section 242 is "Deprivation of rights under color of law." *Id.* Section 1001 involves false statements "in any matter within the jurisdiction of the "executive, legislative, or judicial branch of the Government of the United States . . . ." Section 1956 makes it a crime to conduct a financial transaction with money that the defendant knows to be the proceeds of unlawful activity, with the intent to continue or promote the unlawful activity, hide the unlawful nature of the funds, avoid currency transaction reporting requirements, or with the intent of violating certain IRS code sections.[15] 18 U.S.C. §

---

[15] Section 1956 is a very long statute, and this is not the entire list of potential criminal acts.

1956.

All of these statutes provide for criminal penalties, and there is no language in any of the criminal statutes cited by plaintiff, authorizing a private right of action. *See e.g. Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce 18 U.S.C. § 241 and 1001); *Zito v. New York City Office of Payroll Admin.*, No. 11 Civ. 2779, 2011 WL 5420054, at *2 (S.D.N.Y. Nov. 9, 2011) (finding no private right of action in a case in which plaintiff was attempting to enforce, inter alia, 18 U.S.C. § 1001). Plaintiff, whether he calls himself a "flesh and blood" person or an "estate," may not enforce the above criminal statutes against any of the defendants.

### 5. Miscellaneous Statutes

Plaintiff also cites the Trading with the Enemy Act ("TWEA"), 50 U.S.C. § 4301 et seq.[16] (Compl. at 3 ¶ 7, CM/ECF at 9 ¶ 7). Plaintiff states that "[t]he Constitutional question is how [the TWEA] is operating upon the Estate of ANTHONY BENNETT . . . ." (*Id.* at 3-4, CM/ECF at 9-10). Plaintiff also states that he has notified the President of the United States. (*Id.* at 4, CM/ECF at 5). He then engages in a lengthy discussion of how he believes that the "defendants" are in violation of the TWEA. (Compl. at 8, CM/ECF at 14).

---

[16] The TWEA was formerly cited as 50 App. USC § 1. *See* 50 U.S.C. § 4301 (Designation of the Act). Plaintiff has referred to this statute with its former citation. (Compl. at 3 ¶ 7, CM/ECF 9 ¶ 7).

The TWEA provides that it shall be unlawful for any person in the United States, "except with the license of the President," to, inter alia, trade with "an enemy." 50 U.S.C. § 4303(a) (formerly cited as 50 App. U.S.C. § 3). The "enemy" is defined in 50 U.S.C. § 4302 (formerly cited as 50 App. U.S.C. § 2). Section 4309 is entitled "Claims to property transferred to custodian; notice of claim; filing; return of property; suits to recover; sale of claimed property in time of war or during national emergency." 50 U.S.C. § 4309 (formerly cited as 50 App. U.S.C. § 9).

Plaintiff cites the language of section 4309 regarding the "return of property," and appears to claim that defendants Pheffer (Queens County Clerk); Latella (Criminal Court Judge); Brown (Queens County DA); Stringer (NYC Comptroller); and Judge Davis are all in violation of "Title 50." (Compl. at 7, CM/ECF at 13). Plaintiff also claims that these defendants are "Foreign Agents," but are unregistered and unlicensed. (Compl. at 8, CM/ECF at 14). Plaintiff claims that these defendants must register as "debt collectors." (*Id.*) Plaintiff claims that defendants are acting as "Trustees" to plaintiff's bankruptcy estate.[17] But plaintiff does not explain how any of his allegations show that defendants were "trading" with "an enemy" of the United States.

Plaintiff claims that defendants are using "unlawful tax warrants" to steal "this Beneficiary Money, using GSA forms and "Miller Reinsurance Agreement 273, 274,

---

[17] Plaintiff appears to believe that even though his bankruptcy case was dismissed, there is still a "bankruptcy estate" somewhere, over which the defendants somehow have control and are mishandling.

and 275." Even if any of this made sense, plaintiff has not stated how each defendant[18] used these forms and could, or would have committed these acts.

Plaintiff cites the Bank Secrecy Act and the Patriot Act, without citing any relevant sections of the statutes that the defendants allegedly violated. As stated above, plaintiff states that the defendants are required by the Patriot Act and the Bank Secrecy Act to reveal the "source of their funds by filing a currency transaction report." Plaintiff cites 31 U.S.C. § 5311 which is entitled "Declaration of Purpose." Plaintiff has not stated how the defendants violated these statutes or what sections of the statutes they violated.

Plaintiff also cites two other statutes, the "New York Securities Act" and the "Investment Advisors Act," although plaintiff does not cite any sections of these laws that might be relevant to him or to these defendants. The "New York Securities Act" might be a reference to the "Martin Act," N.Y. Gen. Bus. Law § 352, et seq. This statute regulates the purchase and sale of securities, but is inapplicable to this plaintiff because it does not provide for a private right of action. *See Kraus v. Lee*, No. 14-CV-4143, 2015 WL 2354381, at *3 & n.3 (E.D.N.Y. May 15, 2015) (dismissing action for failure to state a claim because plaintiff failed to provide a statutory basis for his securities law claims) (citing N.Y. Gen. Bus. Law § 352 et seq. and *Ajamian v. Zakarian*, No. 1:14-CV-321, 2014 WL 4247784, at *7 (N.D.N.Y. Aug. 26, 2014)).

___

[18] In addition, most of the defendants named by the plaintiff do not reside in the Northern District of New York.

The "Investment Advisers Act of 1940" is a federal statute, 15 U.S.C. § 80a-1 et seq. It is completely unclear why plaintiff has sued any of the defendants under this statute, and he fails to make any allegations that relate to individuals who are "registered" under the act to provide investment advice. The Supreme Court has held that there exists a "limited" private remedy under this statute to "void an investment adviser's contract," but the act "confers no other private causes of action, legal or equitable. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 249-50 (1979). Thus, plaintiff fails to state a claim under this statute.

Buried in the complaint is the conclusory statement that plaintiff's civil confinement violates the ex post facto and the double jeopardy clause of the constitution. In support of this statement, plaintiff cites 18 U.S.C. § 241 and 242. (Compl. at 10, CM/ECF at 16). As stated above, plaintiff may not enforce the criminal law against any of the defendants. If plaintiff is challenging his detention, he must file an action under either 28 U.S.C. § 2254 (habeas corpus challenging conviction) or § 2241 (challenges to the execution of his sentence). In any event, plaintiff's short statement regarding civil commitment follows a discussion of deprivation of property, which does not appear to be related to his civil confinement. There is no basis for the conclusory statement about his confinement or why the confinement violates the constitution. If plaintiff wishes to challenge his confinement, he must file a proper action to do so against the proper respondent, who would only be the Superintendent or

Warden at the facility where plaintiff is confined.[19]

A very carful review of the plaintiff's complaint reveals that he has simply made conclusory allegations of violations of statutes that do not relate to him or to his dismissed bankruptcy action. He may not sue Judge Davis, and he cites no real basis for suing any of the other defendants. It is clear that none of the defendants are federal Government contractors, or others who might be subject to qui tam liability. The court has searched for other bases for jurisdiction, but has found none.[20] As stated above, if plaintiff is attempting to challenge his civil confinement, and he has not done so, he may do so only by filing the appropriate action for habeas corpus against the appropriate respondent.

### 6.     Miscellaneous Defendants

Plaintiff names some defendants in the caption who he does not mention or mentions only in passing in the body or the "claims" of his complaint. Plaintiff has named Anthony Annucci, the Commissioner of DOCCS; Deborah J. McCulloch, the Executive Director of CNYPC; Barbara Underwood, the New York State Attorney

---

[19] Depending upon the claim that an inmate is attempting to make, 42 U.S.C. § 1983 might be available for such a challenge to the procedures used for confinement at CNYPC. *See e.g. Dorsey v. Hogan*, 511 F. App'x 96 (2d Cir. 2013) (discussing section 1983 challenge to civil commitment). Plaintiff does not appear to be making this type of a claim. Even if he is, the claim is so buried in a mountain of nonsensical claims, against defendants who have nothing to do with his current commitment, that he would have to substantially amend the pleading in order for the court to determine what he might be saying.

[20] Constitutional claims against individual state actors are generally brought under 42 U.S.C. § 1983, while constitutional claims against individual federal employees are brought under *Bivens*. Plaintiff does not states claim under either of these bases for jurisdiction.

General; and Steven Mnuchin, the United States Treasury Secretary. There are no facts alleged in the complaint against these individual defendants that would state any claims against any of them. This action is the epitome of an incoherent and frivolous case that should be dismissed sua sponte. Because this court finds that plaintiff's case is frivolous or at best, fails to state a claim, it has no "substance," and the case cannot meet the first requirement for appointment of counsel. Thus, the court will recommend dismissal on initial review and will order denial of plaintiff's motion for counsel. Because this case is not a qui tam action, the court will also order that it be unsealed.

## VI. <u>Opportunity to Amend</u>

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

Plaintiff may not bring a qui tam action under any circumstances based on the facts above. Thus, the court will recommend dismissing the qui tam action with prejudice and without the opportunity to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 3) is **GRANTED**

**FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that the qui tam complaint be **DISMISSED IN ITS ENTIRETY UNDER 28 U.S.C. § 1915(e)(2)(B)(i-iii)**, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED**, and it is

**ORDERED**, that this case be **UNSEALED**, and that a copy of this **Order and Report-Recommendation** be served on the United States Attorneys Office in the Northern District of New York.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 20, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge